STATE OF MAINE *vs.* JOHN WILBUR DAY.

Washington. Opinion February 17, 1887.

*Arson. Threats. Evidence. Practice. Expression of opinion by presiding justice. Juror. R. S., c. 82, § 83. R. S., c. 106, § § 2, 3.*

It is not necessary that the accused should be previously shown to be connected with the crime, for which he is on trial, to render his threats in relation to the commission of such crime admissible in evidence. Such evidence is admissible at any stage of the government's case.

The statute (R. S., c. 82, § 83) forbidding the expression of an opinion by the presiding justice upon an issue of fact does not prohibit him from calling the attention of the jury to such issue, thereby enabling them to apply the rules of law to the controverted questions involved.

Facts about which there is no dispute may be stated to the jury as proved or admitted, or about which there is no contention, without any infringement of the statute prohibition.

Although by R. S., c. 106, § § 2, 3, a juryman above the age of seventy years is not obliged to sit upon a jury in the trial of a cause, still if he waives that exemption and does sit, the parties have no ground of complaint.

ON exceptions.

Indictment for arson. The opinion sufficiently states the material facts.

The following is that portion of the charge of the presiding justice referred to in the opinion; the particular portions excepted to are included in brackets and numbered to correspond with the numbers used in the opinion :

" We can not always account for a man's conduct by what we

would do ourselves. An honest man cannot comprehend any reason why any man should commit a crime. He knows that crimes are committed, because we have evidence before us constantly; our courts are full of them, so that a man may commit a very great folly. A crime is said to be more than folly. It is one of the unaccountable things that human nature will do. When a crime is committed, you are to look at the circumstances; when a statement is made, you are to look at the circumstances under which it was made. When you examine into human nature, with regard to that, you will find that the better instincts rebel against keeping a secret of that kind. They are very apt, perhaps, to resort to some confession, throwing it out without thinking of the folly there was in it; but of course so far as that is concerned, you will judge.

"[(2) There is another thing in connection with that. What are the probabilities? If he was disposed to make a revelation of that kind, if he felt like it, to whom would he be likely to make it? Would he select a stranger, some one who knew nothing about it, or had no sympathy with him, to make it to, or would he take one with whom he was associating, had been associating, who had some sympathy with him?]

" Now, there has been a good deal of evidence introduced here, upon the one side and the other, not only in regard to threats, but in regard to combinations which existed in the town of Wesley in opposition to other laws. Now, whether there is any violation of law in regard to killing deer, I do not think is of any consequence here. Whether the game wardens, there or else-where, did their duty or more than their duty or less than their duty, is of no consequence as bearing upon the crime itself. One crime does not justify another.

" But, if there was such a state of things existing there as it is claimed on the one side that there was and on the other side that there was not, it might have a bearing upon the probability of his making the statement. [(3) You have heard the evidence. Whether the witness was one of those associating with the persons who were opposed to the game warden, opposed to the execution of the law, as it bears upon the question of whether

the party committing a crime of this kind would be likely to make such a statement to him. If so, if you find such to be the case, there is some probability that he might have done it.] Now, you have heard the evidence, upon the one side and the other. If he did not make the statement, it should not bear against him. If he did make it, you will give it the weight to which it is entitled. You will weigh the evidence. You have seen the witnesses upon the stand."

    \*        \*        \*        \*        \*        \*        \*

"Now, another matter to which he has resorted is what is called an alibi in law; that means, that at the time when the crime was committed he was somewhere else. Now, if he was somewhere else, away, too far off to give any aid or assistance, so that he could not have committed it, that would be a good defense. [(4) If he was near enough to render any assistance, to give any alarm, to give protection to those who were doing it, if such were the facts, then he would be near enough to be a guilty party himself,] but if he was away from there where he could not render any assistance, then he could not have done it.

"Now, the question comes up as to the truth of the allegation, how far it is true. In the first place, you are to ascertain whether the evidence relied upon covers the ground so that he could not consistently with its truth have been present. [(5) It is true that the witnesses have testified in great detail. It must have been very carefully prepared.] They seem apparently to leave no opportunity for him to be there. As to the precise time the fire did take place, I do not know that we have any testimony. You will remember how that is for yourselves."

*Edward E. Livermore*, county attorney, for the state, cited: Whart. Crim. Ev. § 756 (8th ed.); *State* v. *Reed*, 62 Maine, 129; *State* v. *Benner*, 64 Maine, 267; *McLellan* v. *Wheeler*, 70 Maine, 287; *State* v. *Smith*, 65 Maine, 257; *Lord* v. *Kennebunkport*, 61 Maine, 462; *Soule* v. *Winslow*, 66 Maine, 447; *Hunter* v. *Heath*, 67 Maine, 507; *State* v. *Forshner*, 43 N. H. 89; *Fellows' case*, 5 Maine, 333; *State* v. *Quimby*, 51 Maine, 395; *State* v. *Wright*, 53 Maine, 328.

*John F. Lynch,* for defendant.

The law scrupulously guards the rights of the accused. The legislature in its wisdom has expressed its desire for the protection of parties in courts by prohibiting judges from expressing an opinion upon issues of fact arising in a case. R. S., c. 82, § 83.

Evidence of threats was introduced and admitted by the court against the objections of the defendants, to prove guilt. Wharton, in his work of Criminal Law, Vol. 1, p. 728, says : " Perhaps the sound view of this species of evidence is that while it ought not to be received to establish the fact of guilt, it is proper to indicate the grade of the offence."

The foreman of the jury was seventy-four years old, and absolutely disqualified to serve as a juryman. R. S., c. 106, § 2.

FOSTER, J. Several exceptions have been alleged to the rulings and instructions of the justice presiding at the trial of the respondent, who was convicted of the crime of arson.

Some of these exceptions have been waived and are not insisted upon. Of those remaining it would hardly seem necessary to speak in detail, inasmuch as they may be reduced to two classes — those relating to the introduction of evidence, and to the charge of the presiding justice.

I. The first objection that is pressed upon the attention of the court is in relation to the introduction in evidence of what has been termed the " Shacker Boys' " song. The exceptions of themselves afford the court no light as to the nature of this composition ; and if we were to pass upon this objection as presented in the bill of exceptions, there would be no grounds upon which it could be sustained. However, the counsel having treated the question as though it were before us, and being furnished with a copy of the evidence objected to, upon inspection, we are satisfied there is no foundation for the objection, even when viewed in reference to its merits.

The evidence in the case, corroborated by the admission of the prisoner upon the witness stand, shows that the song was in the handwriting of the respondent, and was in part, if not

wholly, his own composition. The statements contained in it were material, taken in connection with the other evidence in the case, tending to show a combination against the game wardens, and manifesting a spirit of hostility to them. It was admissible like any statement, either oral or in writing, made by the prisoner in reference to the subject matter under investigation.

II. The next objection relates to the introduction of threats by the respondent before proof was offered to connect him with the crime.

While it is true that the commission of the offence charged must necessarily be the foundation of every criminal prosecution, yet it by no means follows that it is necessary that the accused party should be previously shown to be connected with the crime in order to render his threats in relation to the commission of such crime admissible. The order in which they are received is not material. They are admissible at any stage of the government's case. Such evidence, when connected with the subject of investigation, is admissible, because from it, in connection with other circumstances, and on proof of the *corpus delicti*, guilt may be logically inferred.

III. The third exception recites five extracts from the judge's charge, of which the respondent complains as being in contravention of c. 212, Laws of 1874 (R. S., c. 82, § 83). Of these, only the second, third and fifth, are insisted upon as containing expressions of opinion upon issues of fact arising in the case.

Upon a careful examination, we do not think that either one of them is open to the objection urged by the respondent. While the statute in question forbids the expression of an opinion by the presiding justice upon issues of fact, it has never been and never should be held to go to the extent of prohibiting the presiding judge from calling the attention of the jury to those issues, thereby enabling them intelligently to apply the rules of law to the controverted questions involved. This is certainly an important duty devolving upon the court in the proper administration of justice, and one which the legislature never intended to prohibit. The prohibition relates to the expression

of an opinion upon an issue of fact arising in the case. Facts about which there is no dispute, and concerning which there is no issue, may properly be called to the attention of the jury in the discretion of the presiding justice. They may be stated to the jury as proved or admitted, or about which there is no contention, without any infringement of the statute prohibition. Such is the decision of this court in *McLellan* v. *Wheeler*, 70 Maine, 287. In that case the court say that "inferences from such matters may be potent in disposing of the controverted questions; yet the statement by the judge of the matters proved and not controverted (or expressly admitted), is not an expression of opinion upon an issue of fact, however strong the inference therefrom may be."

Nor does it follow that there is an expression of opinion upon any issue of fact merely because the presiding justice may see fit to call the jury's attention to certain questions of fact by way of interrogatories addressed to them upon matters important for their consideration in arriving at a correct conclusion upon the main question. A statute like this, if it is to be held as not trenching upon the prerogative of the court, must be strictly construed.

Viewed in the light of these principles, the extracts from the charge of the presiding justice, upon which the respondent's exceptions are based, are not in contravention of the statute prohibition.

That the correctness of a charge is not to be determined from mere isolated statements extracted from it without reference to their connection with what precedes, as well as that which follows, is illustrated when we examine the third and fifth paragraphs. In the closing sentence of the third paragraph the presiding judge observed: "If so, if you find such to be the case, there is some probability that he might have done it." From an examination of the charge which · is before us, it appears that the court was calling the attention of the jury to the question whether the respondent had made a certain statement or not, and not to the commission of the crime. The facts were left to the jury to determine, and only such inferences as might

legitimately follow, provided a certain state of facts were found by them, were stated by the court to aid the jury in coming to a conclusion whether or not such statement was made. In this there is no such indication or expression of opinion upon an issue of fact as the statute contemplates to render exceptions available.

IV. From the argument of counsel as well as from an examination of the case and the judge's charge, it appears that one of the grounds of defence relied upon at the trial was that of an *alibi*. In the course of the charge the presiding judge remarked : " It is true that the witnesses have testified in great detail. It must have been very carefully prepared." Exception is taken to this remark, also, as being the expression of an opinion upon an issue of fact, and an infringement of the statute prohibition. Were we to judge of this expression as found in the bill of exceptions, standing, as it does, isolated from everything which precedes or follows, with no explanation as to what it refers, it would be difficult to see how the respondent could be prejudiced by it. From anything appearing in the exceptions the remark may well apply to the witnesses for the defence, and in support of the truthfulness of the *alibi*. The natural import of the statement, if it is susceptible of any meaning without resort to other portions of the charge in connection with it, is in favor of the prisoner, and he could not be aggrieved thereby. If any confirmation of this fact were necessary, it will be found by an examination of the paragraph in the judge's charge, from which this isolated fragment is taken.

V. The last exception relates to the decision of the court in overruling the motion for a new trial claimed by the respondent on the ground of disqualification of one of the jurors who sat in the trial of the case.

It appeared that Rufus Fickett, the foreman of the jury, was seventy-four years of age at the time he was drawn to serve as a juror, although his age was not known to the prisoner or his counsel till after the trial.

The statutes of this state, c. 106, § 2, provide that the board of municipal officers, " at least once in every three years, shall

prepare a list of jurors, under the age of seventy years, qualified to serve as jurors." In the section following, certain persons therein designated are exempted from serving as jurors, and the statute directs that their names shall not be placed on the lists. This statute has never been construed as disqualifying, but simply as excusing the persons named. Thus constables have always in this state been exempt from serving as jurors; but in *Fellows' Case*, 5 Maine, 333, a constable was returned as juryman and the court held that he was competent, though not compellable to serve.

Statutes similar to the one in question exist in many of the states in this country as well as in England. But the general doctrine applicable to these statutes is, that they do not disqualify, but merely excuse the persons named. In accordance with this doctrine, it has been held by this court that a postmaster of the United States, though exempt, was not disqualified to serve as a juror. *State* v. *Quimby*, 51 Maine, 395. It has also been held that exemption, not being a disqualification, is a personal privilege of the person exempted, which he may waive; and if he does so, parties have no ground of complaint. *State* v. *Wright*, 53 Maine, 344; *State* v. *Forshner*, 43 N. H. 89. The language of the statute in reference to the age of jurors, above referred to, and applicable to the case before us, is hardly as strong in its disqualifying tendency as the language in section three of the same statute, to which we have also referred, where it is provided in express terms that the names of the persons therein referred to " shall not be placed on the lists." Yet the decisions to which we have referred seem to place the matter beyond question.

*Exceptions overruled.*

Peters, C. J., Walton, Danforth and Emery, JJ., concurred.

Haskell, J., concurred in the result.